Good morning, and may it please the Court. I'm William Robinson for the Appellant, Mr. Villa. I would like to reserve two minutes for rebuttal in this case. Okay. This case comes to this Court in a somewhat unusual procedural posture, in that the normal Edpa review question about whether the Federal Constitution was reasonably applied is not really at issue here. The District Court found that the holding of the State courts was an unreasonable application of Weaver v. Graham and Lentz v. Mathis. And the government does not contest this point here. So the only issue here is whether there was a waiver, as found by the District Court. This is the language the District Court used. Petitioner avoided 50 years of potential prison time by pleading no contest to his sentence after being informed the 15 percent cap of Section 2933.1 would apply to his sentence. Therefore, the Court finds that a petitioner has waived his right to an ex post facto challenge. As we explained in the briefs, there are several flaws with this argument. First is that this was not a plea bargain case in any way, shape, or form. The sentence when the plea bargain was taken, when the plea, excuse me, when the plea was taken in this case, Mr. Villa was told that he was basically no promises as to sentence were to be made. He was admitting all of the charges and there were no promises as to sentence. Nor was there any advisement of any kind about credit limitations at the time of this that the plea was taken, which distinguishes this case from the two cases that are cited by the District Court, the District Court opinions on a very related point, the Martinez and the Barajas case. So this is not a plea bargain case. All that you have in this case are two facts that come across at the sentencing hearing. From which the District Court found a waiver or implied a waiver of the constitutional right to challenge the ex post facto clause. The first is that Mr. Villa did not get a maximum sentence. Indeed, what the Court did here was impose consecutive midterm sentences, which is the standard under California law, unless aggravating circumstances are present. But in no shape or form was this a part of any agreement. And the second point is, at the very end of the sentencing, the Court told Mr. Villa, via without eliciting any waiver or admission of him, that his credits would be limited, that he had to serve 85 percent of his sentence. Now, how one gets from this to a waiver is quite beyond me. The District Court's opinion seems to suggest that there was a requirement that at that point in time at the sentencing hearing, the defense should have agreed or objected, and by not objecting, somehow accepted the sentence at these limits. But that, in fact, is contrary to California law, which states, as we've explained in the briefs, if you want to challenge your credits as illegally imposed or improperly imposed, if you don't do it at the sentencing hearing, you are permitted to do it at a motion after sentencing, and then do a notice of appeal of that. That's precisely what happened here. As we demonstrated in the briefing, excuse me, the first waiver argument that was raised by the government in the State courts was that Mr. Villa had not complied with this provision of law of the Penal Code, 1237.1. Kagan. But didn't the State court specifically find that you were allowed to raise these issues on appeal? Yes. So that's by the boards. I mean, there couldn't have been any procedural bar because they said there wasn't. Well, that's exactly – thank you, Judge Berza, and that is exactly my point. The waiver claim here is sort of dressed up in various guises, but one of them seems to be, in Judge Ware's order, that because there was no objection at the time of sentencing, that this was a waiver of the ex post facto right. And, in fact, the State court found, to the contrary, based on application of State law review principles, that there was no waiver. The other factor to consider here is simply that – But why are we – but didn't the State court specifically find that there was no waiver and that they addressed the merits? Because they said there was no waiver. So why isn't that just the end of the whole story? Whether there's a waiver or isn't a waiver is going to be a matter of State law, and that should be the end of it. I would agree with that. What the district court – in effect, the prosecution came up with a new waiver theory in the Federal court. And if you look at the briefing in the district court, we, in fact, challenged their ability to do that, and it is a discretionary matter in the district court whether you can raise waiver for the first time. What has that got to do with the credit he gets for – what he's objecting to is he doesn't think he's going to get enough credit for time served on a possible work release or something. That's correct. Now, what – he was eligible for 196 years. It would take quite a while to serve that sentence. He ended up getting a sentence of 96 years. Ninety-six. So it knocked off quite a bit of imaginary or fantasy years that California seems to thrive on in these cases. But what does it have to do with ex post facto? Is there something about the cutting off of work credit and good time credits that is ex post facto in this case? What's ex post facto in this case is that it's undisputable that as to the crimes for which the ex post facto challenge is involved, they were all committed before the effective date of Penal Code Section 2933.1, which restricts credits to only 15 percent. And the reason that's a violation of ex post facto is – and that's a clear violation, which the district court found to be – was by virtue of Weaver v. Graham and Lentz v. Mathis. Those cases state that laws that affect your ability to earn credits affect what the Supreme Court in Weaver called your effective sentence. And that's a – Well, on the – the court of appeals looked at it, apparently, in a kind of a holistic way, and said it doesn't matter. Well, what they said – They found no waiver, so they wavered things out of the case. Yes. What the court of appeals – the State court of appeal found, they looked at a case which essentially was a case that was not related to ex post facto at all, but had to do with some crimes being violent felonies and some crimes being nonviolent felonies. And they said under this law, it applies to the offender and not the offense. The court of appeal took that line from this other case, Ramos, and said, well, we're going to apply that, and that, in effect, trumps the ex post facto clause. In other words, just because – because one of Mr. Villa's crimes were committed after the effective date of this law, you can then apply the whole law to that. And our argument throughout, which the prosecution has not contested here, is that that's not how the ex post facto clause works. You can't simply make something criminal or increase the punishment because there are other crimes that were committed. Well, is this a calculation of good time, which is probably fictitious in this man's case anyway, if he's got to do 85 percent of 96 years? Well, I mean, I literally – Make whether it gets good time or not. I did work this out once. And I actually – this argument was made to the district court, Judge. If we are correct and he prevails on this issue, Mr. Villa has a chance to get out of prison in his mid-90s. Will he live that long? It's very unlikely, but it's possible. Without this, essentially, without a Methuselah-ian lifespan, he has no chance of ever getting out. So admittedly, the chances that this Court's decision will mean anything to this individual are slim, but they do exist. Do you want us to write an advisory opinion that don't do that anymore or something like that? No, I don't think it is an advisory opinion. It is an opinion that essentially says the ex post facto clause must be honored in the courts, that State court misapplied it, as the district court said, and waiver simply doesn't apply. Recalculate, Ms. — Scalia, what Supreme Court decision says that the State court of appeals was wrong? Weaver v. Graham. Weaver v. Graham says that you look to the facts at the – when the offense is committed, that is the date that matters for purposes of different – of the district. If the State court's ruling were that the last crime is to be burdened with, I mean, for example, you get no good time for that crime, that would work, right? But that's not what they're saying. That is indisputable. But what they're saying is that each individual crime is going to be treated this way because of the last crime, rather than that – so it's not really a recidivism issue as to the crime that was committed afterwards. It's not a burden on that crime. It's a burden on all the earlier crimes. What we're talking about here is a – just in response to your question, we're talking about consecutive sentences. And the way consecutive sentences work under California law for this type of offense is full-term consecutive sentences. So it's eight years on every one of these terms, most of which were committed before the effective date of this law. And under the State court's ruling, Mr. Villa is subject to the 15 percent credit restriction as to all these crimes for which consecutive sentences are involved. Kagan. Roberts. Thank you very much. Good morning. May it – excuse me – please support Arthur Beaver for the Warden Michael Knowles. As we argued in our brief, Pelland has waived his ex post facto – But I don't understand that. Didn't the State court specifically say he didn't? Those arguments were slightly different. It was under California procedural law. And in any event, the State court may – But what else would apply other than California procedural law? Well, in this Court, Federal constitutional law. In the State court, the procedural rule that requires a defendant to appeal a denial of credits at the first level in the superior court was applied here. The argument there is purely procedural for the sake of allowing the trial court to have the first – first opportunity to examine that issue. Whereas here, we're dealing more with the equitable powers of habeas and whether or not they are entitled to gain credits that they were denied. But there is no Federal waiver law. Is there any Federal waiver law that you're aware of? Not as applied to States. Sorry, what? Not as applied – not as in this case, in a direct appeal from a Federal conviction press. Right. But I mean, in this case, when you're coming from State court, my understanding is there's exhaustion. Exhaustion. There's procedural bar. There was no bar. You have some third theory. What is it? Simply that because habeas is an equitable remedy, and here he pled guilty to all charges, granted there was no bargain force and the State court decided the question and you're essentially saying that there's something insulating the Federal habeas from determining a question that was fully decided by the State courts. What's equitable about that? The reason that the appellate court was able to hear that issue directly on appeal was that because the sole issue he raised was not simply the denial of credits. He was raising additional constitutional claims. Exactly. And that's what he's doing here, too. Well, whereas here he's only raising the credits claim. The waiver issue is the only issue that we're discussing today. No. He was raising the ex post facto issue, and the district court decided the ex post facto issue, but he waived it. Which is the sole claim that was raised on habeas being the denial of credits. If he had raised additional issues challenging his sentence or the underlying lawfulness of that conviction, then had the district court adopted a California procedural rule, in this case 1237.1, then perhaps it also would rule that it was able to consider that issue without regard to waiver. Here, however, because habeas being an equitable remedy, and because he accepted this, he pled guilty, and he received a substantial benefit in that his sentence was 50 years and more below the stated maximum. Well, it wasn't a benefit. It was simply the district court decided to sentence him to that. There's no indication the district court decided to sentence him to that because he pled guilty, and certainly there's no indication that there was any agreement that the district court would sentence him to that because he pled guilty. There's definitely no indication of an agreement for that, but, however, the early concession of guilt is one of the sentencing factors that a trial court will consider when sentencing. In addition, regardless of the agreed-upon benefits, he certainly avoided, as we said in the briefs, the drama and embarrassment of a trial. Moreover, he was explicitly advised that the credits would be limited, and he raised no objection in the trial court. He was advised after he pled guilty. After the plea, at the time of sentencing, correct. So do you agree that if he hadn't, you know, your theory is that he waived his ex post facto challenge. If he hadn't, then he would have been entitled to relieve. That was an ex post facto violation. Well, at this point, we only considered the issue of waiver because prevailing in the district court, this was the only issue we considered properly raised under the COA. However, under Weaver and Lentz, it is at best arguable only that this was not an ex post facto violation. I cannot state for certain what position our office will adopt. Let me understand. Why did you not argue at all about the ex post facto? In this case, because the district court ruled against us, but ruled that there was the issue had been waived. Since we prevailed on that issue, we concluded that the COA was limited to the waiver issue, and we did not justify the waiver. So you're representing that it wasn't a choice you made, that you couldn't have argued about the ex post facto? We deliberately decided not to make that argument here. Not because you couldn't have. I'm sorry? Not because you couldn't have. No. All right. So if you haven't decided it, then you've waived it. No? That the issue was discussed among the office, and we believe that it was not advantageous to discuss the underlying ex post facto issue in this case. So what I'm asking you is, then, do we – have you waived the issue? No. We would argue we have not because, like I said, prevailing below, the only issue that we lost on was irrelevant in light of the waiver decision. If that waiver decision is overturned. But if you don't argue something to us, and it's not by the boards? Again, no. I don't see – because we are – in our eyes, the issue being waiver, if that issue is reversed, if you decide that there was no waiver and the district court erred and you remand, at that point, perhaps our office might have some opportunity to appeal independently of that or to seek a different remedy in the trial court. I understand that it's confusing. In the trial court. I understand that it's a confusing issue. We've had extensive discussion in the office about this. In any event, as we argued in the brief, because it is an equitable remedy in habeas and because he has received a substantial benefit by avoiding trial and receiving a sentence substantially below the maximum, after being – or before being advised explicitly of this credit limitation without objection, we urge you to affirm the district court's ruling. Thank you. I don't think anybody can say that habeas is an equitable remedy after the 1996 adoption of the ADPA. Correct. But as we noted, the interplay between State law and this is not great. Thank you. Thank you very much. You really have to say something else? Consider that carefully. No. I would only say one thing. The waiver argument that the district court found would make sense if this were a case like the Martinez case, which the district court relied on, in which the defendant was asked at his – told at his plea, credit limitation of 15 percent and this is an actual condition of your plea. Do you agree to this? Yes. Okay. We don't have that here. There is no waiver. Thank you very much.  The case of Villa v. Knowles is submitted.
judges: Goodwin, Berzon, Ikuta